**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROSEBELLE**
**VILLAHERMOSA CARTIN-**
**ENARIO,**

|                          |                  |
|--------------------------|------------------|
|              **Plaintiff,** | **1:15-cv-710** |
|                          | **(GLS/DJS)**   |

**v.**

**ALFRED CASTRO TECSON,**

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|------------------|-----------------|
| **FOR THE PLAINTIFF:** | |
| Office of Marc A. Asch | MARC. A. ASCH, ESQ. |
| The Barrister Building | |
| 137 North Park Street, Suite 201B | |
| Kalamazoo, MI 49007 | |
| | |
| **FOR THE DEFENDANT:** | |
| Law Offices of John Howley | JOHN. J.P. HOWLEY, ESQ. |
| 350 Fifth Avenue, 59th Floor | |
| New York, NY 10118 | |

**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Rosebelle Villahermosa Cartin-Enario commenced this

diversity action against defendant Alfred Castro Tecson alleging legal

malpractice.  (*See generally* Compl., Dkt. No. 1.)  Pending are Tecson's

motion to set aside default and dismiss the complaint for lack of subject

matter jurisdiction, (Dkt. No. 9), and Cartin-Enario's motion for default

judgment, (Dkt. No. 12).  For the reasons that follow, Tecson's motion is

granted in part and denied in part and Cartin-Enario's motion is denied as

moot.

## II. <u>Background</u>[1]

In 2011, Cartin-Enario, a citizen of the Phillippines, hired Tecson, an

attorney admitted to practice in New York and a citizen of the state of

Virginia, to represent her and her husband in an immigration matter.

(Compl. ¶¶ 1, 3, 6, 8.)  On April 17, 2012, U.S. Citizenship and Immigration

Services (USCIS) notified Tecson, as the attorney of record, that an H-1B

petition for Cartin-Enario was revoked and that Cartin-Enario may be

required to depart the Unites States or her ability to return to the United

States in the future might be affected.  (*Id.* ¶ 10.)  In May 2012, USCIS

mailed a second notice to Tecson, informing him that Cartin-Enario's

husband had been denied a change in his non-immigrant status due to the

---

[1] While the facts pertinent to the court's disposition of the pending motions are undisputed, brief factual background has been provided from allegations in the complaint.  The recited allegations are just that, allegations.

fact that such benefit was dependent on Cartin-Enario's status, which had been revoked.  (*Id.* ¶ 11.)  This notice again warned of the potential consequences of Cartin-Enario remaining in the United States without authorization.  (*Id.*)  To address this situation, Cartin-Enario hired Tecson once more to file a new H-1B petition on behalf of her prospective employer, Linwood Center, Inc.  (*Id.* ¶ 12.)  Tecson filed the petition in July 2012.  (*Id.* ¶ 14.)  Tecson advised Cartin-Enario and Linwood that Cartin-Enario could remain in the United States and begin working at Linwood upon the filing of the new petition.  (*Id.* ¶ 25.)  Tecson failed to advise Cartin-Enario that she could seek an H-1B visa at a U.S. Consulate abroad, prior to becoming inadmissible for re-entry.  (*Id.* ¶ 33.)

The July 2012 H-1B petition erroneously asserted that Cartin-Enario currently held H-1B status.  (*Id.* ¶ 21.)  In November 2012, USCIS mailed Tecson a request for evidence regarding Cartin-Enario's status as an H-1B visa holder at the time the new petition was filed, and requested a response by February 8, 2013.  (*Id.* ¶¶ 34, 37.)  Tecson failed to respond to the request for evidence.  (*Id.* ¶ 41.)  Thereafter, USCIS denied the July 2012 petition, and, because she had remained in the United States without authorization, Cartin-Enario became inadmissible for re-entry to the United

3

States for ten years.  (*Id.* ¶¶ 29-30, 42, 46.)  Consequently, the Linwood Center, where she had been employed as a special-education teacher since July 2012 earning $46,136.48 annually plus benefits, terminated Cartin-Enario.  (*Id.* ¶¶ 43-44.)  In addition, Cartin-Enario's husband became inadmissible for re-entry to the United States for ten years.  (*Id.* ¶ 47.)

Cartin-Enario filed her complaint on June 9, 2015, seeking $600,000 in damages.  (*See generally id.*)  Subsequently, she filed proof of service, stating that a copy of the summons and complaint was served, in person, upon Tecson on June 15.  (Dkt. No. 4.)  Cartin-Enario sought entry of default pursuant to Local Rule 55.1 on July 7, 2015.  (Dkt. No. 5.)  On July 9, 2015, Tecson's counsel contacted counsel for Cartin-Enario and requested an extension of time to answer the complaint, which was refused.  (Dkt. No. 9, Attach. 2 ¶¶ 3-4; Dkt. No. 10, Attach. 2 ¶¶ 11, 13.) Soon thereafter, the Clerk entered default.  (Dkt. No. 7.)  The pending motions were filed afterward.  (Dkt. Nos. 9, 12.)

### III.  Standard of Review

#### A.    Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or

constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To that end, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In deciding a motion to dismiss pursuant to Rule 12(b)(1), the court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

## B. <u>Motion to Set Aside Default</u>

"The court may set aside an entry of default for good cause," Fed. R. Civ. P. 55(c), which requires the court's consideration of three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense." *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012). "This test should be applied in the context of the general preference 'that litigation disputes be resolved on the merits, not on default.'" *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 142 (S.D.N.Y. 2000) (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)). Any doubts "must be resolved in favor of trial

on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993).

## IV. Discussion

### A. Diversity Jurisdiction

As a threshold matter, Tecson contends that the court lacks subject matter jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 9, Attach. 3 at 1-4, 8-10.) There is no dispute that diversity of citizenship exists here. (*Id.* at 1-2.) However, Tecson contends that Cartin-Enario cannot show with "reasonable probability" that the amount in controversy exceeds $75,000. (*Id.* at 2.) Cartin-Enario counters, and the court agrees, that the court has subject matter jurisdiction here. (Dkt. No. 10 at 7-17.)

As relevant here, diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks and citations omitted). As the Second Circuit has noted,

"[t]his burden is hardly onerous," because courts "recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (internal quotation marks and citations omitted). To overcome this presumption, "the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold," which has been described as "a high bar." *Id.* (internal quotation marks and citations omitted). Generally,

> the amount in controversy falls below the threshold only in three situations: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the money recoverable by the plaintiff; and 3) when independent facts show that the amount of damages was claimed by the plaintiff merely to obtain federal court jurisdiction.

*Brown v. N.Y. State Supreme Court for the Second Judicial Dist.*, 680 F. Supp. 2d 424, 429 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

As noted above, the complaint clearly states that the amount in controversy is "not less than $600,000." (Compl. ¶ 49.) Thus, the court presumes that this is a good faith representation of the amount in controversy. *See Scherer*, 347 F.3d at 397. Moreover, in opposition to Tecson's motion, Cartin-Enario submitted an affidavit in which she states

that, at the time of her termination, her annual salary at the Linwood Center was $46,136.48. (Dkt. No. at 10, Attach. 1 ¶¶ 15-17, 26); *see Makarova, 201 F.3d at 113* ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." (citation omitted)). On the other hand, according to Cartin-Enario, she can only make $2,400 annually in the Phillippines. (Dkt. No. 10, Attach, 1 ¶ 18.) Because of her loss of H-1B status, Cartin-Enario asserts that her husband was unable to change his status to H-4, and lost full-time work earning $7.25 an hour. (*Id.* ¶¶ 19-20.) Comparatively, he can only earn $7,870 in the Phillippines. (*Id.* ¶ 21.) She argues that they will both suffer this reduction in wages for ten years because of her unlawful presence in the United States, which resulted from Tecson's legal malpractice. (*Id.* ¶ 22.) She further asserts that she paid Tecson $1,000 for his legal work. (*Id.* ¶¶ 8, 22.)

Tecson counters that there is no reasonably probability that any employer would have hired Cartin-Enario to work in the United States if she had left the country when her H-1B visa expired, was living in the Phillippines, and had no visa to enter the country. (Dkt. No. 9, Attach. 3 at 8-9.) This however, does not rise to the level of "a legal certainty that the

amount recoverable does not meet the jurisdictional threshold." *Scherer*, 347 F.3d at 397 ("[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. [E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." (internal quotation marks and citations omitted)); *see Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings."). Tecson's further argument, specifically, that Cartin-Enario could only have worked in the United States on an H-1B visa for less than six years, as opposed to the ten years she claims, also fails to overcome the presumption. (Dkt. No. 9, Attach. 3 at 9.) Assuming, *arguendo*, that this is true,[2] Cartin-Enario's claimed loss of income for as little as two years, along with the fees she paid Tecson, would exceed the $75,000 threshold. (Dkt. No. at 10, Attach. 1 ¶¶ 15-18, 26.) Tecson's motion to dismiss the complaint, therefore, is denied.

## B.    Motion to Vacate Default

---

[2] Cartin-Enario contends that she could have obtained an exemption from the six year limit, or, if she remained outside the Unites States for at least one year, become eligible for a new six-year period. (Dkt. No. 10 at 13-14.)

Tecson next contends that the "good cause" standard of Rule 55(c) is met, and his default should be set aside for that reason. (Dkt. No. 9, Attach. 3 at 10-12.) Specifically, Tecson argues that: (1) his default was not willful, but, rather, a matter of a calendaring error; (2) Cartin-Enario will not suffer any prejudice by setting aside Tecson's default other than a delay; and (3) he has a meritorious defense in that he denies the allegations against him. (*Id.*) Cartin-Enario responds that Tecson's default was willful in light of the fact that he is an attorney admitted to practice in New York and was contacted by Cartin-Enario's counsel shortly after being served; his denials only constitute a partial defense of the claim against him; and Cartin-Enario will suffer prejudice in the form of "living day to day with the fear of immigration enforcement" because she cannot afford to return to the Phillippines, and, if she is forced to prosecute her claims, she will not have the legal funds to conduct international discovery or return to the United States for trial. (Dkt. No. 10 at 17-25.) For the following reasons, the court concludes that Tecson's default should be set aside.

First, beginning with willfulness, the factor that "carries the most weight," *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013), the court is satisfied that Tecson did not willfully default. Indeed, the

undisputed facts demonstrate that Tecson did not accurately record the deadline to respond to the complaint, contacted counsel to represent him in this matter on July 1, 2015, and, upon hearing back from counsel on July 8, sent the summons and complaint to counsel by overnight mail.  (Dkt. No. 9, Attach. 1 ¶¶ 11-13.)  On July 9, 2015, three days after the deadline to answer had passed and prior to the clerk's entry of default, Tecson's counsel contacted Cartin-Enario's counsel and requested an extension until the end of July to respond to the complaint.  (Dkt. No. 9, Attach. 2 ¶ 3.)  The request was refused.  (*Id.* ¶ 4; Dkt. No. 10, Attach. 2 ¶ 13.)  Approximately three weeks after the deadline to answer had passed, and about two weeks after the clerk's entry of default, Tecson filed the instant motion.  (Dkt. Nos. 7, 9.)  The pattern of delay and negligence on the part of Tecson in handling immigration matters alleged by Cartin-Enario, (Dkt. No. 10 at 19-20), is not particularly relevant to the question of whether the *default in defending the action* was willful.  Based on the foregoing, Tecson's default was due to negligence, not willful conduct, and the first factor weighs in favor of Tecson.  *See S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) ("We have interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or

11

careless."); *see also Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 60 (2d Cir. 1996) (requiring "bad faith, or at least something more than mere negligence, before rejecting a claim of excusable neglect based on an attorney's or a litigant's error" and noting that even gross negligence "does not necessarily preclude relief" from a default judgment).

Moving on to the second prong—prejudice—the court finds that Cartin-Enario will not suffer great prejudice as a result of setting aside the default. As Tecson points out, (Dkt. No. 9, Attach. 3 at 11-12), setting aside the default will only result in a delay of recovery, which alone is insufficient to establish prejudice. *See Enron*, 10 F.3d at 98 ("[D]elay standing alone does not establish prejudice."). The prejudice that Cartin-Enario alleges, specifically, the fact that she has insufficient funds to prosecute her claims or return to the Phillippines, (Dkt. No. 10 at 23-24), was not caused by Tecson's minor delay in responding to her complaint and is not the kind of prejudice that favors a denial of a motion to set aside a default. *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (explaining that prejudice is established where *delay* "thwart[s a] plaintiff's recovery or remedy" or "result[s] in the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for

fraud and collusion). Accordingly, the prejudice factor also weighs in favor of Tecson.

Finally, the court must consider whether Tecson has presented a meritorious defense. *See Peterson*, 467 F. App'x at 33. "In order to make a sufficient showing of a meritorious defense . . . , the defendant need not establish [its] defense conclusively, but [it] must present credible evidence of facts that would constitute a complete defense." *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir. 2011). Conclusory details in support of a "meritorious defense" showing are insufficient. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (internal quotation marks and citation omitted).

Here, Tecson's motion is accompanied by his affidavit in which he asserts that he "informed [Cartin-Enario] that her visa had been revoked and that she should make plans to leave the United States." (Dkt. No. 9, Attach. 1 ¶ 5.) He further claims that he specifically "told [her] that if she remained in the United States without legal status, she could be deported

and barred from reentering the country for up to [ten] years" and "advised [her] that she should leave the United States and apply for a new H-1B visa from the Phillippines." (*Id.* ¶¶ 5, 7; Dkt. No. 9, Attach. 3 at 12.) He contends that his assertions are supported by the fact that Cartin-Enario continues to remain unlawfully in the United States, well after acknowledging the consequences of remaining. (Dkt. No. 13 at 5.) Thus, Tecson denies the allegations in the complaint that he provided bad advice to Cartin-Enario, or failed to advise her of the potential consequences of her actions. (Compl. ¶¶ 25, 31-33, 40, 46.) Cartin-Enario further alleges in her complaint that Tecson "knew or should have known that the [July 2012] petition ha[d] approximately a 0.00% chance of being approved as [she] had been 'out of status' more than three months at the time of filing." (*Id.* ¶ 24.) However, as Tecson points out, (Dkt. No. 13 at 6), the regulations governing the admission, extension, and maintenance of status provide some discretion to USCIS, albeit only in limited circumstances, to approve an extension of a non-resident alien's status, even after an existing visa has expired. *See* 8 C.F.R. § 214.1(c)(4). Finally, Cartin-Enario argues that, in the least, she is entitled to a refund of the legal fees she paid Tecson, due to his unreasonable conduct in filing a petition in which he

certified that Cartin-Enario maintained her status, when he knew, or should have known, that was not the case. (Dkt. No. 10 at 22-23.) It is less clear whether Tecson has provided a defense for this claim. However, this potential discrepancy is of no moment, because, on balance, the factors for setting aside entry of default weigh in favor of Tecson. Moreover, consistent with the general preference for deciding cases on the merits, the court concludes that the information contained within Tecson's affidavit is sufficient, for purposes of Rule 55, to establish that it would be unfair to deprive Tecson of an opportunity to present his defense in court, regardless of whether it will ultimately carry the day with a jury.

Accordingly, Tecson's motion to vacate entry of default is granted. In light thereof, Tecson shall file an appropriate responsive pleading or motion within fourteen days of the date of this Memorandum-Decision and Order, and shall notify Judge Stewart in order to schedule further proceedings in accordance with this Memorandum-Decision and Order. Lastly, because Tecson's default has been set aside, Cartin-Enario's motion for entry of default judgment, (Dkt. No. 12), is denied as moot. *See United States v. Premises & Real Prop. with Bldgs., Appurtenances, & Improvements Located at 26 E. Park St., Albion, NY*, No. 07-CV-759S, 2008 WL 4596210,

at *2 (W.D.N.Y. Oct. 14, 2008).

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Tecson's motion to set aside default and dismiss the complaint (Dkt. No. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** with respect to Tecson's request to vacate the entry of default; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that Cartin-Enario's motion for default judgment (Dkt. No. 12) is **DENIED** as moot; and it is further

**ORDERED** that Tecson shall file an appropriate responsive pleading or motion within fourteen (14) days of this Memorandum-Decision and Order; and it is further

**ORDERED** that the parties notify Magistrate Judge Daniel J. Stewart in order to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 8, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge